UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 15-CR-20541-ALTONAGA

UNITED STATES OF AMERICA,

vs.

LUIS ALFREDO ESCALANTE-LANDAVERDE
_____/

## LUIS ESCALANTE'S SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD VARIANCE

Luis Escalante files his sentencing memorandum, and moves the Court for a downward variance, and support thereof, states the following:

### INTRODUCTION

As the Government in this case agrees, Luis Escalante was the least culpable participant in this narcotics conspiracy. Luis is also an outliner in that from the passing of time from his involvement in this case, he matured tremendously and made the decision at the end of 2023 to hire counsel and arrange his voluntary surrender. Luis' desire to come forward now was simply driven by maturity and an innate interest to do the right thing for himself and his family. While the decision to leave his family behind was overwhelmingly difficult, compounded by an unclear understanding of when he will see them again, Luis knows it was the right one and will serve as the example he wants his daughters to later measure him by.

With respect to the facts of the case, at all times Luis took direction from Jose Castillo-Sanabria, who was part of a larger group of investors at the center of this

conspiracy. Luis exercised no independent control over any aspect of the conspiracy—neither logistical nor over personnel. He also held no investment stake in the narcotics and was paid as normal worker. After the seizure of the cocaine load at the heart of the Indictment, Luis voluntarily left the conspiracy and fled to work as a cattle farmer in the mountains along the Honduran and Guatemalan border.

Taking the 18 U.S.C. 3553(a) factors into account, in particular (a)(6) – the need to avoid unwarranted sentence disparities – Luis is asking the Court to vary downward from what he believes is the correct Total Offense Level[1] and sentence him to a term of 57 months, which would reflect the seriousness of Luis' involvement in the offense, provide both specific and general deterrence to criminal conduct, and enable Luis to continue his own, self-determined path to rehabilitation through continued education and vocational training while serving his sentence.

*Section 3553(a) Factors Applied to This Case*

   a) **The Nature and Circumstances of the Offense**

Rather than travel under a request for the Court to make a factual finding that Luis warrants a minor role adjustment under USSG §3B1.2, we have opted to frame Luis' sentencing request as a motion for downward variance in order to capture the other relevant 3553(a) factors in one encompassing request.

The incontrovertible facts in this case show that Jose Castillo-Sanabria, along with other investors, was at the top of the culpability pyramid. Below Mr. Castillo

---

[1] Assuming the Court sustains the objection as to the airplane enhancement under USSG § 2D1.1(b)(3)(A).

was Jhon Deiby Laguna-Florido, the person who had the connection to the source of supply of the cocaine in Colombia that was later seized. Below both Mr. Castillo and Mr. Laguna was Luis, who essentially drove as a lookout for the terrestrial transport of the cocaine once it arrived in Honduras. At all times during the conspiracy, Luis received directions and payment for his work from Mr. Castillo. And while the Factual Proffer indicates that Luis directed the driver of the truck carrying the secreted cocaine, he was not providing instructions of his own accord, but on behalf of Mr. Castillo. *Factual Proffer pg. 3.*

The text of Application Note 3(A) explains that §3B1.2 operates to "provide[] a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant." Here, it is plainly obvious that Luis is much less culpable than Mr. Castillo, the investor-owner, and Mr. Laguna, the person with the contact that enabled this conspiracy to get off the ground, as it were. There is a strong argument that Luis was also less culpable than the truck driver of the cocaine that was seized in that Luis merely reported on the truck's progress from a distance and whether there was law enforcement present.

Had Luis filed an objection as to role, and if the Court sustained the objection, his total offense level and advisory guideline range would drop significantly from Level 33 (108-135 months) to Level 25 (57-71 months) because of the application of USSG § 2D1.1(a)(5). 2D1.1(a)(5) states – "the offense level specified in the Drug Quantity Table set forth in subsection (c), except that if (A) the defendant receives an adjustment under §3B1.2 (Mitigating Role); and (B) the base offense level under

subsection (c) is (i) level **32**, decrease by **2** levels; (ii) level **34** or level **36**, decrease by **3** levels; or (iii) level **38**, decrease by **4** levels. If the resulting offense level is greater than level **32** and the defendant receives the **4**-level ("minimal participant") reduction in §3B1.2(a), decrease to level **32**." Applying the preceding and other applicable USSG adjustments, the breakdown to 57-months imprisonment at the low end would be calculated as following:

- Base Offense Level § 2D1.1:                        38
- Base Offense Level Adjustment § 2D1.1(a)(5)        -4
- Adjustment for Role in the Offense:                -2
- Acceptance of Responsibility:                      -3
- Safety Valve § 5C1.2:                              -2
- Zero-Point Offender §§ 4C1.1(a) and (b):           <u>-2</u>
- Total Offense Level:                               25 (57-71 months)

Believing that Luis is factually very close to warranting a minor role reduction, we are asking the Court to consider a sentence that would reflect his lesser culpability when taken in conjunction with the additional, very unique factors of Luis' case.

**b) The Need to Avoid Unwarranted Sentencing Disparities**

We next ask the Court to consider Luis' request for a downward variance based on the need to avoid a sentencing disparity with his more culpable co-defendants. § 3553(a)(7) requires sentencing judges to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct.

The first defendant to appear before the Court for sentencing was Mr. Laguna. For his early cooperation, the Court sentenced Mr. Laguna to 73 months

imprisonment, which was later reduced to 66 months after the government filed his Rule 35(b) motion. [D.E. 82]. In sentencing Mr. Laguna, the Court varied downward significantly, almost 40%, from his advisory guideline range. The Court then sentenced Mr. Castillo to a term of 144-months imprisonment, an approximately 33% downward variance from an advisory guideline range of 210-262 months. [D.E. 70]. Mr. Castillo's sentence was then reduced further by government motion. [D.E. 90].

If the Court were to apply a proportional and congruent variance to Luis, the numbers would come out to somewhere between 70-65 months (33-40%).

### c) The History and Characteristics of Luis Escalante-Landaverde

The history and characteristics of Luis are exceptionally unique. While the Guidelines mechanize a sentence based upon drug quantity or financial loss, they give no weight to the history and characteristics of the defendant, which Congress has instructed the sentencing court to consider, equally, with the nature and circumstances of the offense. Balancing the guidelines with the 3553(a) factors, we ask the Court to apply fair and due consideration to the characteristics and specifics of the Luis' life that support the instant Motion for Downward Variance:

- He is a first-time offender.
- He was in the process of voluntarily surrendering when he was arrested in Honduras.
- He grew up under exceedingly difficult conditions that saw his elder brother kidnapped by police and later found tortured and killed in a morgue.
- He is a loving, involved father to his two minor daughters.

The love and affection his wife and daughters have for Luis is unwavering. And while the whole Escalante family is hurting deeply without Luis, they are proud of

him and know he agreed to come forward and do his time for their benefit. Two brief but sincere letters from his family are affixed hereto as "Exhibit 1."

By way of background, Luis, now 43, was born in La Jigua, a small town in north Honduras. Luis describes his upbringing as being one of impoverished conditions — his family did not have electricity, running water, or indoor plumbing. He and his siblings also lacked education opportunities and suffered from food insecurity, often relying on their own farming to make ends meet. The World Bank reports that Honduras is one of the poorest nations in Latin America and the Caribbean. *See* (https://databankfiles.worldbank.org/public/ddpext_download/poverty/33EF03BB-9722-4AE2-ABC7-AA2972D68AFE/Global_POVEQ_HND.pdf). "[E]stimates for 2018 show that 16.5 percent of the Honduran population lived on less than US$1.90 per day (the international poverty line), the second highest rate in LAC; and around half (50.3 percent) lived on less than US$5.50 per day (the upper middle-income global poverty line)." *Id*.

At the age of 15 Luis left his town in Honduras in search of opportunities in the United States. Finding work in construction through family and friends, Luis was able to work full-time and sent money home to help support his family. After working in construction for between two and three years, Luis returned home to help his father in his cattle trading business. Luis has always worked hard in life and is capable of continuing to do so as a productive member of society upon completion of

his sentence. At the time of his surrender-arrest, Luis worked a small herd of cattle and trained horses.

The level of violence and crime in Honduras is staggering, which at the time of this conspiracy held the crown as the murder capital of the world. *See* (https://edition.cnn.com/2013/03/27/world/americas/honduras-murder-capital/index.html). Along those lines, in a tragic turn of events in 2013, Luis' brother was reportedly stopped by police in one department of Honduras, then found in a morgue in another department 12 hours away with obvious signs of torture. After this happened, Jose Castillo offered to look after Luis and provide him with work, which he accepted.

Luis is remorseful, repentant, and has made great strides in his maturity, which is what led Luis to take the hardest step of his life — agreeing to surrender when he did not have to. Taking all of Luis' personal characteristics into account — his harsh upbringing in a violent and impoverished environment, the violence the Escalante-Landaverde family suffered first-hand, and his personal growth as an individual lend themselves to making Luis a prime candidate for a significant downward variance.

## CONCLUSION

Owing to the Luis' efforts to voluntarily surrender, his lesser culpability when compared to his co-defendants, the need to avoid unwarranted sentencing disparities, and his background and personal characteristics, we are respectfully asking this Honorable Court to sentence Luis to a term of 57 months imprisonment.

Respectfully submitted,

**MARKUS/MOSS PLLC**
40 N.W. Third Street, PH1
Miami, Florida 33128
Tel: (305) 379-6667
markuslaw.com

By:   /s/ Todd Yoder
        Todd C. Yoder
        tyoder@markuslaw.com